In re Coopman, Victoria Marie Coopman, Appellant in Pro Se, Erin J. Kennedy, Council for Appalee, CapFlo Funding Group Managers, LLC. Okay let's have the appellant come on up. Okay I want you just tell us who you are first. So good morning. I'm Victoria Marie Coopman. Okay so you're representing yourself today. I'm representing myself today. Would you like to reserve some time for rebuttal? I would. Five minutes for rebuttal please. Absolutely. Okay and we'll do our best to give you a heads up when you're getting close. Okay and I'll keep an eye on the clock as well. Okay. Okay so this is an unmistakable constitutional rights appeal case for the violation of due process under the 5th, 14th U.S. amendments as well as California Chapter 7. The district court's procedural and legal error of imposing a judgment against the defendant for a matter that was not before the court and had never been the plaintiff's claim of damages. You said district court, you mean the bankruptcy court? Yes. Yeah we don't reverse district courts very often around here. Okay. The district court substituted during the trial the actual plaintiff's claim of damages. They detailed in plaintiff's adversary action and in multiple court filings they substituted for a new claim that didn't exist. The actual claim the plaintiff had for corporate debt that was filed for over four years in five different court cases was for $957,000 that included attorney fees, interest, penalties, fines, fees, that sort of thing. Those were the elements of the claim that they had against the corporation and subsequently me. So the error by the district court for their judgment in a new manner and never before claimed as damages denied me the legal and constitutional rights of advance notice for due process so I could be prepared for trial, be heard, defend myself, and bring compelling evidence showing that this new claim should be denied and dismissed during that court case in September of 2023. Can I ask you a couple quick ones? Pardon me? A couple quick questions. Absolutely. If one were just to look at numbers one might say gosh you're better off. You know it was $200,000 less than they might have asserted at some point. So are you telling us that there was a totally different theory of damages? Correct. Okay. Why don't you tell us what that was? One was $957,000 that the plaintiff filed against the corporation in their bankruptcy and subsequently me when the company couldn't pay. Right. And so that included fines, fees, penalties, interest, attorney fees. $957,000 over five court cases. Never changed. They never wavered in their change. But the $756,000 judgment amount and the $957,000 proof of claim amount. Don't they both have as a portion of that claim amounts dealing with wrongfully deposited invoice or payments on invoices? No the 957 does not specifically state anything about deposited misdirected funds. The 957 How did they get a claim? They didn't get a claim for attorney's fees first. They had a claim because something wrong happened or they alleged that something wrong happened. Well the plaintiff during the trial for the adversary action was always 957. Very specific elements. But I'm not asking about the number. Okay. I'm asking about what was the basis of 957. Wasn't that started because there was wrongfully deposited payments? That's not according to what the claim states. No. It's not what I've read that the claim states. And the 756 where the judgment came from. So what was the basis of the 957? What was the basis of the 957? Basis of the 957 is quite detailed. I'm sure it's in one of their briefings. It's factoring exposure, factoring due, unapplied collection that they had received against all of those monies. It was factoring revenue that they received for other AR financing that they weren't entitled to because they never lent it on it, but they had it and kept it. And attorney fees for the $25,000. Can I ask it a little bit differently? You know the numbers are you know that's an addition exercise which isn't that hard and why it's different. We can talk about it if you want to. But the point of their lawsuit was that there was some bad behavior. And because of the bad behavior per them, the debt should be not should be non-dischargeable. And that's an element of under A2 that's either fraud or embezzlement or larceny. And under A6 it's you know it's some kind of intentional tort. Now what I think we're trying to ask is if the theories were the same, even if the number turned out to be a little bit different, where's the due process issue? Okay so I think that's an important question. Yeah. And so in according to the transcripts from that September 20th trial, per the court, quote, I don't believe plaintiff has established that the proof of amount is appropriate damage award. And I don't feel from the record that the defendant has established that there were credits or offsets that were recouped or whatever you want to call the 756. So because the 756 was not the claim, it wasn't part of the claim, it wasn't the claim of damages for five court cases, I wasn't prepared to bring in those credits showing repayment. I didn't know that because I didn't get advance notice that that's what was going to become the claim. I wasn't prepared to defend myself. Okay you say you didn't get advance notice, but the pre-trial stipulation, okay, before the trial, you signed off on the pre-trial stipulation that $756,000 of receivables were wrongfully deposited in Innovations' account. And repaid. But they were. Is that in the stipulation that they were repaid? Um, was there a stipulation that they were repaid? I, according to their claim, you can see there was a lot of repayments. I guess the question is, is that. But yes, they were repaid. You knew before, you knew before bankruptcy, or before the trial, that there was $756,000 wrongfully deposited. Yes, two, three years order earlier by the corporation. But I also knew, I also knew, that they had been repaid. Well, isn't that then what you should brought up at trial? No, because that was never their claim. All of their claims that they ever sent, proof of claim, $957,000 for very specific elements, including interest, fines, fees, all of it. They didn't say. Why would any of that have precluded you from telling the court, but I paid it back? Well, when during the trial, so definitely during the trial, it looked like the judge was kind of grabbing onto that. He said, I don't know about that $957,000. I don't get it. It doesn't make sense to me. But what's this $756,000 over here? So why don't you all do post-trial briefs and give me some more details. But according to the transcript record, that the district court said for post-trial. Again, just for the record, you mean the bankruptcy court, right? Yeah, bankruptcy court. I'm sorry. It's okay. The bankruptcy court. I think the bankruptcy court will appreciate the promotion. I quote, this is from the judge. So to be clear, I'm not opening the record up for any more evidence. The evidence is over. So when it looked like the $756,000 was becoming what was going on with that, all of a sudden we switched. He said, no new evidence. And if I had brought in, in my post-trial brief, evidence that that had been repaid, then that would have been new evidence and I couldn't. What was the evidence that you said that you owed nothing? It's a question of what you owe. What would I have brought? Okay, we know from the stipulation that, from the stipulation, we understand that invoices were paid to the wrong account. And now there's a question about damages and you're saying, well, you paid it off. Well, did you pay off the $756,000? Did you pay off the $957,000? Are you saying that you didn't owe any money? The $756,000 was repaid and it was repaid over the course of the year with the two corporations doing business together. The other thing, the court had to make a determination that there was some sort of misappropriation of funds to enter a judgment. But then the court also has to determine the amount of the judgment. There's a stipulation that accounts payable were paid into the wrong account, so there's a stipulation that something was done wrong. And then the court had to make a determination as to what the damages were. Did you present evidence that you owed nothing? I presented evidence that I did not owe those elements of the $957,000. Okay. Did you claim that you owed nothing, that they didn't have a claim? I think that it was all because it was a corporate debt and they were miscellaneous charges in that $957,000 of attorney fees and interest and penalties and fines and fees, then yes, that was the court case. I didn't personally owe anything. You're closing in on your five, so if you want to rest now, that's fine. If you have one more point you want to make, have at it. What? I'm sorry, say that again, sir? If you want to rest now and reserve the rest for about... Yes, I will. Okay, got it. Thank you. Thank you so much. Okay. Let's have the appellee. Good morning, Your Honors. Good morning. Erin Kennedy from Foreman Hall on behalf of Caplo Funding Group Managers LLC, the appellee. We're here today on this appeal. Appellants building the appeal around the argument that the non-dischargeable amount was $756,000 rather than the $957,000 which was originally claimed in plaintiff's complaint. The larger amount claimed in the complaint was based on... The complaint or is that the proof of claim? Well, it's both. Both, okay. It's both. The amount was set forth. And just to anticipate some of the questions that I heard the court asking the appellant, attached to the proof of claim is a detail of the breakdown of how the $957,000 was arrived at, which includes a component of factoring advances due. So the misdirected funds was included as a component of the proof of claim, which had other components in it. What was the amount of that component in the detail you're looking at? The factor advances due? Yes. $898,815.40. That doesn't match either. No, it doesn't. But what happened was the actual... We didn't go into the detail of this on appeal and on our post-trial briefing when the judge indicated the actual damages because at that point when I took a look at the case law in the trial, I thought the judge was right. So we didn't go back to revisit the components of the... In any event, you say the component dealing with the supplied payments, that amount in the proof of claim was in excess of the ultimate judgment of $756,000. Yes. In addition to address an issue that came up before, in the trial transcript at pages 47 to 49, on my direct examination of Ms. Koopman, I asked her in detail about the repayment of the amounts due. And the language starts at line six and says, so you contend that CapFlo is overpaid for the amount Innovation Pet owed to it? Yes. What did you base that conclusion on? It would be the accounting records set out of QuickBooks. Did you ever produce those records? I did. There were several different general ledger accounts that were provided to CapFlo. I think in this bankruptcy as well as mine that I produced general ledger codes that showed all of the ins and outs of all the payments that came in and out, and that's where I would have pulled the number and the aggregate. Question. Have you provided that document to, as part of your discovery responses, to us in connection with this case? Answer. I believe so. I said okay, which I do too often. There was a further answer that said, I believe that I sent it to my attorney and I would have assumed he would have sent it on to CapFlo. Question. Is that one of the documents that you have submitted as defendant's exhibits in this case? No, I don't believe so. And you can't provide a better explanation of that document or produce it as we sit here today? No, I don't have that document as we sit here today, but it was. I remember having to provide it for Innovation Pet and I'm pretty sure I did it for my own too. And it was several documents. It was like four different GL codes and all of the detail of every transaction between CapFlo funding, PMW, and payments coming in and out. And you recall that we requested after your deposition that you produce that document to us. Do you recall that? I believe so. And your lawyer said he didn't actually have any such document, even though we had asked for it and it was not produced to us. I'm sorry, what? We asked for the document after your deposition and it was never produced to us. Do you recall that? I don't recall that was or was not sent to you guys. I know that I believe I produced it, but I know for sure I produced it for Innovation Pet that it went to the attorneys representing CapFlo for Innovation Pet bankruptcy. But you can't produce it now. So we did try to request the repayment information at multiple intervals, starting with the actual Innovation Pet bankruptcy case and continuing through Ms. Koopman's individual bankruptcy case. And the document was never produced nor has been produced here today. So what we have here with the argument being presented by the appellant is that she is trying to get a retrial so that she can go back to bankruptcy court and do a better job because she supposedly has information that wasn't presented to the bankruptcy court in the first instance. In our brief, just to point out misrepresentations by the defendant in our brief at page, this is our trial brief at page 9 to 10, we list the amounts of the misdirected payments and indicate that that was a cause for the financial harm that was suffered by CapFlo. In page 10 to 11, we indicate that the active and continued deceit caused CapFlo to advance funds it would not have and the misdirection of the tractor supply payments prevented CapFlo from collecting the payments it was entitled to. And we indicate in our brief that we had requested records and they had not been produced. So she was before trial well put on notice that we were requesting this document. She never produced them. She doesn't have them because they don't exist. This is all a story that the appellee is trying to continue to present to the court so that she isn't found responsible for the fraud that she committed while she was the CEO of Innovation PAC. Well, and all of this begins with the premise that the bankruptcy court, among other things, has the ability to liquidate a claim. And that's what you did at the trial court, right? I mean, there was a number of the proof of claim. There was another number that ended up being the proved up number. And element one of a 523 action is what's the claim? That's correct. And element two is, is it non-dischargeable? And your position would be that was fully litigated in front of the bankruptcy court. Everybody had the chance to come in and argue for deductions, set-offs, reductions, whatever you want to call it. And that happened. And that's, in your mind, there's no factual errors to that. That's correct. Okay. I think Judge Lafferty's point was the same as mine. No, I just flipped the two. He's right in the order. I had the damages issue and the non-dischargeability issue, and I put them in the other order. But they both have to be determined. That's correct. Okay. That's correct. And as I said earlier, we, after the trial, before submitting our post-trial briefs, made a review of the law and the statute as to the issue of what damages had been proven by the facts of the case. And we didn't dispute the judge's conclusion that the $756,000 number was the appropriate amount of damages. I have no further questions. I don't either. Thank you. Thank you.  Thank you. Come on up. You've got a little over five minutes. Okay. So the statement made that there was a $898, $815.40 balance due of the $756,000 is very misleading. That doesn't take into account all of the credits on their own proof of claim that payments were made to them. And they are all substantiated here. They had an additional $481,000 in unapplied collections. So they had collected the money, but they weren't sure where to apply it. So they didn't apply it against the $898,000. Then it also has factoring reserves of $216,804. Those were unfactored cash receipts that they collected after their initial claim, I guess, of the 957. But they collected more money over a period of time and continue to collect money. They collected money all the way into the beginning of the bankruptcy court. So I just want to be clear. What I hear you arguing here or arguing now is that the plaintiff didn't prove the amount of their claim. But that's different than what I see as the major argument in your brief to us, is that you didn't have notice of what the claim against you was going to be. I did have notice. And that claim, that notice, and I said over four years, was $957,000 for fines, fees, penalties, interest, not misdirected funds. Can I follow up on Judge Grubb's point? Yes, please. That's why you had a trial, right? I mean, unless you're going to tell us I was suppressed, no one listened to my evidence and they should. This is not a do-over. You have to tell us what the mistake was at the trial level. And that's not what I'm hearing. You have a trial to figure out the number. Judge Wolff figured out a number, right? So he just went with what the gross amount of the misdirected funds were. There was no calculation provided to him of, hey, this was the misdirected funds. Here's all the cash receipts they got against those. And I understand what you're saying. I believed that their proof of claim that they had presented of fines, fees, penalties, interest, that was their claim. The only reason they brought up the $756,000 was an example of it misappropriate that I did something wrong. Therefore, this claim for $957,000 should not be dismissed in my bankruptcy. Two separate claims. This was only used as an example against me. Not ever. Even in their post-trial brief, they didn't claim the $756,000. They stayed with the $957,000 every step of the way. So what was it that you presented to the trial court, to the bankruptcy court, to show that you owed less than what they were claiming? Actually, during the bankruptcy for Innovation Pet, I had provided the trustees. There was two bankruptcies, Chapter 11 and Chapter 7. I provided the trustees with everything. All of the bank statements. And actually, on the very first, when you filed for bankruptcy, you list all of the debtors. And they were not listed as a debtor. They were actually listed for, I want to say, $400-some-thousand that they owed Innovation Pet that had been overcollected. And even in the trial by the bankruptcy court, they said that I did not perjure myself when I filled out that form. That was the records that were available for Innovation Pet. I provided to the trustee. The trustee reviewed everything and never said, no, that's not true. And they never said, oh, but you owe capital funding $756,000. The trustees went into huge detail. They went back three or four years for that company and went through everything. And even in the court case for the bankruptcy, the judge said I did nothing wrong when I You say you've done that, but then you say also that you were surprised by and you didn't have an opportunity to do that. I did it during the bankruptcy court for Innovation Pet. And then the claim that they had, again, was $957,000, fines, fees, penalties, and interest. It was never the $756,000. So I understand what you're saying. And hindsight's 20-20, but I never assumed that $756,000 was ever going to be, other than used as an example on why the $957,000 shouldn't be dismissed. I had already proven in the bankruptcy court for Innovation Pet that $756,000 had been repaid and that actually the plaintiff owed the corporation $407,000. And the judge did not, in the bankruptcy trial, say I was wrong. He said that I honestly did have the information available to present it. Okay. Well, you're just about at your time. Judge Farris, any questions? Thank you. I appreciate the time very much. Okay. We have no further questions. Thank you. Okay. All right. The matter's submitted and we'll get you a written decision as soon as we can. Thank you very much. Thank you. Okay.
judges: Lafferty, Faris, Corbit